## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TRAMAINE JERNIGAN,

     Plaintiff,

  v.                                                      No. CV 11-828 JCH/CG

LUPE MARTINEZ, et al.,

     Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

     **THIS MATTER** comes before the Court on Plaintiff's *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* ("Complaint"), filed on September 15, 2011, (Doc. 1), *Defendants Chaplain K. Opatz and S. Gallego's Martinez Report* ("*Martinez* Report"), filed on June 12, 2012, (Doc. 16), and *Plaintiff's Response to Defendants Chaplain K. Opatz and S. Gallego's Martinez Report* ("Response"), filed on September 13, 2012, (Doc. 27).

     Plaintiff's Complaint alleges that K. Opatz, the Guadalupe County Correctional Facility ("GCCF") chaplain, and S. Gallego, the GCCF food services manager, in their individual capacities, violated his constitutional rights under the First and Fourteenth Amendments. (Doc. 1). This Court ordered Defendants to produce a *Martinez* Report addressing Plaintiff's claims. (Doc. 14). Defendants filed their *Martinez* Report on June 12, 2012, and requested that the Court construe it as a Motion for Summary Judgment. (Doc. 16). Shortly after Defendants filed their *Reply in Support of Defendants' Martinez Report* on July 26, 2012, Plaintiff informed the Court that he had not received the *Martinez* Report. (Doc. 22). The Court ordered Defendants to send Plaintiff a copy of the *Martinez* Report and gave Plaintiff an extension of time to file his response. (Doc. 23). On September 12, 2012, Plaintiff filed his response to Defendants' *Martinez* Report. (Doc. 27).

After carefully considering the filings and the record, the Court recommends that Defendants Motion for Summary Judgment be granted in part and denied in part.

## I.    Background

### a.   Plaintiff's Claims

Plaintiff was incarcerated at GCCF when the events at issue in his Complaint took place. (Doc. 15 at 1).  His sworn Complaint contains four claims against Defendants.  In his Complaint, Plaintiff states that Defendants Gallego and Opatz refuse to provide him with a "religious (Halal) diet" and that he is forced to eat food which violates Islamic dietary law. (Doc. 1 at 2).  Plaintiff writes that Defendants "claim that [the] facility menu is 'Muslim friendly' meaning that they don't serve . . . pork, but food that is being made [has] pork by products or ingredients that are unlawful for me to consume." (*Id.* at 2)  Plaintiff also states that Jewish inmates are provided a Kosher diet. (*Id.*).  Second, he alleges that Defendant Opatz forced him to worship with the Nation of Islam, a sect to which he does not belong and which he claims does not adhere to the teachings of orthodox Muslims such as himself. (*Id.* at 4). He also claims that Defendant Opatz purposefully destroyed his Islamic religious materials because Opatz "doesn't believe in my faith." (*Id.*).  Finally, Plaintiff claims that Defendant Opatz hindered his religious practice "by placing stipulation[s] and self-made rules to govern the practicising [sic] of [Plaintiff's] religion." (*Id.* at 6).

Plaintiff responded to Defendants' *Martinez* Report with several pages of additional details that he believes support his claims.  (Doc. 27 at 1-14).  These pages have been witnessed, but not verified or sworn under penalty of perjury.  (*Id.* at 14).  Plaintiff's Response also includes, as relevant to the motion for summary judgment, documents supporting Plaintiff's assertion that his religious beliefs are sincerely held (Doc. 27-1 at 17-18; Doc. 27-2 at 11, 18-19) and six weeks of menus for GEO Group Facilities.  (Doc. 27-2 at 12-17).

**b.  Defendants' *Martinez* Report/Motion for Summary Judgment[1]**

Defendants' filed a *Martinez* Report that included information related to Plaintiff's claims. Among the information included in the Report were copies of grievances filed by the Plaintiff that related to the claims, Plaintiff's disciplinary files, Plaintiff's religious diet request form, affidavits from Defendant Opatz and the current Food Services Manager (not Defendant Gallego), among others, and copies of the some of institution's policies from the relevant years.  (Doc. 16).  The policies included were the New Mexico Corrections Department ("NMCD") Inmate Grievance Policy and Procedures, the NMCD Inmate Disciplinary Policies and Procedure, the NMCD Religious Diets Policy (from 2012 and 2011), and the NMCD Religious Programs Policy (from 2010 and 2011).

Plaintiff filed several grievances that have been submitted to the record as part of Defendants' *Martinez* Report.  On April 8, 2011, Plaintiff filed an informal grievance stating that his request for a religious diet was denied by Defendants despite the fact that Plaintiff filed all the appropriate documentation required by the facility's policies.  (Doc. 16-1 at 5-30).  In the informal grievance, Plaintiff states that Defendant Gallego told him that religious meals were being taking away from Muslim inmates because all meals served are "Muslim friendly." (*Id.* at 9-10).  Plaintiff also states that Kosher meals continue to be served.  (*Id.* at 10).  Plaintiff also elaborated on the requirements of a diet conforming to Islam, including details on how an animal should be killed and the similarities between a Kosher diet and a Halal diet.  (*Id.* at 14-15).  In his related formal grievance, Plaintiff argues that it is discriminatory to provide Jewish inmates with Kosher diets while denying Muslims a religious diet.  (*Id.* at 6).  Plaintiff appealed the resolution of his grievance to the Secretary of the Corrections Department.  (*Id.* at 5-30).  The response states that Plaintiff is "receiving a legitimate nutritional diet meal as required" and that

---

[1] The Court notes that on December 7, 2012, Defendants filed a *Reply in Support of Defendants' Martinez Report*.  Defendants did not provide an explanation as to why the Reply was filed over two months late, nor did Defendants seek leave from the Court to make such a filing.  The Court does not consider this filing because it does not comply with D.N.M.LR-Civ. 7.4(a).

his claim that he is not "being provided with a kosher/halal meal because [he is] of the Jewish faith is unsubstantiated and unfounded.  The GGF [sic] current menu conforms to the Muslim requirements."  (*Id.* at 5).

On May 11, 2011, Plaintiff filed an informal grievance against Defendant Opatz, contending that his First Amendment rights to practice his religion were purposely infringed on by Defendant Opatz.  (Doc. 16-2 at 19-34).  Plaintiff complained that Defendant Opatz forced him to worship with the Nation of Islam while members of various Christian denominations had separate services and that he was denied a religious diet that would exclude improperly prepared food.  (*Id.* at 24-25).  Plaintiff's formal grievance and departmental appeal include additional complaints that Defendant Opatz treats the Muslim community differently and lost Plaintiff's religious materials.  (*Id.* at 20-21).  Plaintiff's appeal to the Secretary of the Corrections Department was addressed on the merits: "you have failed to provide any type of proof that the GCCF chaplain is discriminating and negligent against the Muslim community. . . . you have Jumah [sic] prayer services every Friday, therefore you are practicing your religious beliefs." (*Id.* at 19).

On May 19, 2011, Plaintiff filed an informal grievance against Defendant Opatz for withholding religious materials that were delivered to GCCF.  This grievance was also formally filed, and ultimately appealed to the Secretary of the Corrections Department.  (*Id.* at 1-18).  The appeal was substantively addressed, and Plaintiff was told that he would not be compensated for the materials because he failed to prove "negligence or willful conduct on the part of staff." (*Id.* at 1).

Defendants' *Martinez* Report also includes an argument that Defendants are entitled to summary judgment on all of Plaintiff's claims.  Defendants assert that there are three grounds on which the Court should grant them summary judgment.  First, Defendants argue that Plaintiff has not exhausted his administrative remedies on at least two of his claims.  (Doc. 16 at 18-19). Second, Defendants claim that Plaintiff cannot demonstrate that Defendants violated his

constitutional rights.  (*Id.* at 20-23).  Finally, Defendants argue that Plaintiff, who is alleging his

claims against Defendants in their individual capacities, has failed to allege Defendants acted

pursuant to a GEO policy or custom and therefore, his claims "fail as a matter of law and must

be dismissed."  (*Id.* at 24).

## II.      Standard Governing Motions for Summary Judgment

The court shall grant summary judgment only if "the movant shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under the

governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue

is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the

nonmoving party. *Id.*  The movant bears the burden of making a prima facie demonstration that

there is no genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71

(10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

If the moving party has demonstrated an absence of material fact, the "nonmoving party

must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587(1986) (internal quotations omitted).

The mere existence of some evidence in support of the nonmoving party, however, will not be

sufficient for denial of a motion for summary judgment; there must be enough evidence to

enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson,* 477 U.S.

at 249.  The nonmovant must go beyond the allegations and denials of his pleadings and

provide admissible evidence, which the Court views in the light most favorable to him. *Panis v.*

*Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995).

The purpose of a *Martinez* Report is to "develop a record sufficient to ascertain whether

there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon,* 935 F.2d 1106,

1109 (10th Cir. 1991).  "On summary judgment, a *Martinez* report is treated like an affidavit, and

the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992).  A plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and is sworn under penalty of perjury.  *Hall*, 935 F.2d at 1111.  A court may not rely on a *Martinez* report to resolve material disputed facts where it is in conflict with pleadings or affidavits, nor can material factual disputes be resolved based on conflicting affidavits. *Id.*at 1109, 1111.  A factual dispute exists even when the plaintiff's factual allegations in conflict with the *Martinez* Report are less specific or well-documented than the factual findings in the *Martinez* Report.  *Id.* at 1109.

The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See id. at* 1110. However, the Court should not be a *pro se* litigant's advocate.  *Id.*  In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994).

### III.   Analysis

#### a.  Exhaustion of Remedies

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996). Under this provision, "proper exhaustion" is compliance with the prison's grievance procedure, including its deadlines. *Woodford v. Ngo,* 548 U.S. 81, 88 (2006).  Under the PLRA, the exhaustion requirement is mandatory and no longer within the discretion of the district court.  *Id.* at 85.  However, when a prison accepts a grievance that was filed belatedly, and considers it on the merits, the grievance is considered "proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."  *See Ross v. County of Bernalillo,* 365 F.3d 1181, 1186 (10th Cir.2004)

*overruled on other grounds by Jones v. Bock,* 549 U.S. 199 (2007); *Cannon v. Mason*, No. 08-7117, 340 Fed. Appx 495, 497-98 (10th Cir. 2009) (unpublished).

The New Mexico Corrections Department has a policy regarding the administrative resolution of inmate grievances.  (Doc. 16-3 at 17-30).  Under this policy, the first step in the grievance process is for an inmate to file an informal complaint "within five calendar days of the incident giving rise to the complaint."  (*Id.* at 25).  If the informal complaint fails to resolve the complaint, the next step is for the inmate to file a formal grievance, which must be filed within twenty days of the incident giving rise to the complaint.  (*Id.* at 25).  A Grievance Officer will review the formal grievance for timeliness and completeness, conduct an investigation, and make a recommendation.  (*Id.* at 27).  Once the Grievance Officer has made a recommendation, the Warden will review the grievance and recommendation and make a decision.  (*Id.* at 28).  If an inmate is dissatisfied with the Warden's decision, he may appeal the decision to the Office of the Secretary of Corrections within seven calendar days of receiving the Warden's decision.  (*Id.* at 28).  At this stage, the "Secretary or designee will render a final decision on the grievance" and the inmate will be informed of this decision in writing.  (*Id.* at 29).  With the decision of the Secretary, the inmate has exhausted all of his remedies.

Defendants argue that Plaintiff failed to exhaust his administrative remedies in regards to his claims that Defendant Opatz hindered his ability to practice his religion, compelled him to worship with the Nation of Islam, stole his religious property, and denied him a Halal diet.  While the *Martinez* Report includes three grievances that address these claims (each grievance does not necessarily mention each claim).  Defendants argue that one grievance, SR-11-06-20, in which Plaintiff lists all four of his claims, is not properly exhausted.  (Doc. 16 at 19; Doc. 16-2 at 19 – 26).  Specifically, Defendants assert that the Inmate Grievance was not filed within twenty days of the incident giving rise to the complaint, as required by the Inmate Grievance Policy.  (Doc. 16 at 19; Doc. 16-3 at 25).  While this is accurate, this particular grievance was accepted

and addressed on the merits by the Warden and by the Office of the Secretary of Corrections. (Doc. 16-2 at 19 – 26).  Therefore, in accordance with the Tenth Circuit case law explained above, the grievance is considered proper and "avoids exhaustion. . . hurdles in federal court." *Ross*, 365 F.3d at 1186.  Plaintiff's other grievances have not been challenged by Defendants and are also considered properly exhausted because they were addressed on the merits.

### b.  § 1983

An civil rights action under § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (1996).  To establish individual liability in a § 1983 action, a plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166.  A defendant who is being sued in his individual capacity may be able to assert personal immunity defenses.  *See id*.  To prevail in an action against an individual in their official capacity, a plaintiff must show that the official acted pursuant to his employer's custom or policy in depriving the plaintiff of his federal right.  *See id*.

Plaintiff's Complaint explicitly states that he is suing Defendants "in their own capacity." (Doc. 1 at 3).  Defendants do not raise any defenses of immunity to Plaintiff's federal claims or otherwise suggest that Plaintiff cannot bring a § 1983 against them in their individual capacities. (Doc. 13 at 5-6).  In Defendants' *Martinez* Report, they state that "to succeed on his claims against Chaplain Opatz and S. Gallego under 42 U.S.C. Section 1983, Jernigan must show that a policy or custom in place at GEO was the moving force behind their acts."  (Doc. 16 at 23). Defendants' argue that, because "the Complaint contains no allegations whatsoever regarding any policy or custom of GEO that caused injury to Jernigan[,]" Plaintiff's claims "fail as a matter of law and must be dismissed."  (*Id*. at 24).

The Court disagrees.  Plaintiff is not suing Defendants in their official capacities, thus he has no obligation to demonstrate that Defendants acted pursuant to a policy or custom. Defendants appear to have misunderstood the capacity in which Plaintiff is suing them. Plaintiff's claims do not fail as a matter of law and Defendants are not entitled to summary judgment as a matter of law.

### c.  First Amendment Claims

Plaintiff claims that Defendants violated his First Amendment rights by denying him a Halal diet, by forcing him to worship with the Nation of Islam, and by hindering his religious practice.  (Doc. 1 at 1-6).  Defendants assert that Plaintiff has not alleged an actual Constitutional violation.  (Doc. 16 at 20-23).

The First Amendment ensures an individual's right to freely practice his religion.  U.S. Const. amend. I.  Although prison inmates retain the protections of the First Amendment, prisons can restrict these rights if the restrictions are reasonably related to legitimate penological objectives.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348; *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must first show that the defendants "substantially burdened his sincerely-held religious beliefs.  *See Kay*, 500 F.3d at 1218; *McKinley v. Maddox*, No. 11-6263, 2012 WL 3292389 (10th Cir. Aug. 14, 2012) (unpublished).  If the plaintiff has satisfied this step, the prison may identify the legitimate penological interests that justified the impinging conduct.  *Kay*, 500 F.3d at 1218.

The inquiry into whether a plaintiff's religious beliefs are sincerely held is "almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment."  *Id.* at 1219.  In *Abdulhaseeb v. Calbone*, 600 F.3d 1301(10th Cir. 2010), the Tenth Circuit defined "substantial burden" under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5 (2000).  Although the analysis of a First Amendment claim is not exactly the same as the

analysis of a claim under RLUIPA, "the principle dispositive is the same: [a plaintiff] must show that defendants' conduct imposed a substantial burden on his religious practice." *Strope v. Cummings*, No. 09-3306, 381 Fed. Appx 878, 881-82 (10th Cir. 2010) (unpublished).  In *Strope*, the Tenth Circuit applied the definition of substantial burden from *Abdulhaseeb*, where it stated that a religious exercise is substantially burdened

> when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

 *Abdulhaseeb*, 600 F.3d at 1315.

Once a plaintiff has shown that a defendant's conduct substantially burdened his religious exercise, the prison may identify penological interests that justify this infringement. The Court then balances the four factors set out in *Turner v. Safley*, 482 U.S. 78 (1987), to evaluate the reasonableness of the impinging conduct:

> whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Turner*, 482 U.S. at 89-91.

Because Defendants assert that Plaintiff failed to allege an actual Constitutional violation and offer no argument that Defendants' conduct is related to a legitimate penological interest, at this stage the Court considers only whether Plaintiff has alleged a substantial burden on his sincerely held religious beliefs.  The Court notes that Defendants do not challenge the sincerity of Plaintiff's religious beliefs, and because it is a credibility determination and not appropriate for summary judgment, Plaintiff's religious beliefs are assumed to be sincere for purposes of this analysis.

### i.   Denial of a Religious Diet

Plaintiff alleges that Defendants deprived him of his First Amendment right to exercise his religion by denying him a Halal diet.  He states that Defendants claim that the prison menu is "Muslim Friendly" because pork is not served, but he claims that food is served that contains pork by-products or ingredients that are "unlawful" for Plaintiff to consume.  (Doc. 1 at 2). Defendants argue that Plaintiff has not shown that he has been deprived of his right to practice his religion because meals that comply with Halal requirements have "always been available to Jernigan" because the prison provides meals that do not contain pork or pork by-products and offers a vegetarian meal.  (Doc. 16 at 20-22).

Defendants cite to *Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003), to support their contention that a prison is not obligated to offer meals containing Halal meat if it provides a vegetarian meal that does not violate Halal restrictions.  (Doc. 16 at 22).  However, the Tenth Circuit recognizes that "prisoners have a constitutional right to a diet conforming to their religious beliefs."  *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2003); *see also LaFevers v. Saffle*, 936 F.3d 1117 (10th Cir. 1991).  This principle has been affirmed in several cases brought by Muslim and Jewish prisoners.  *See Alamiin v. Miller*, No. 08-1371-F, 2010 WL 3604660 (W.D. Okla. Sept. 9, 2010) (unpublished); *Smith v. Bruce*, 568 F. Supp. 2d 1277 (D. Kan. 2008); *Caruso v. Zenon*, No. 95-MK-1578, 2005 WL 5957978 (D. Colo. July 25, 2005) (unpublished).

Therefore, the analysis is whether Defendants' conduct substantially burdened Plaintiff's constitutional rights.  The Tenth Circuit explained in *Strope* that it had previously held that while the flat denial of a Halal diet with approved meats was actionable because it was a substantial burden on the plaintiff's religious practice, an incident in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable because it was an inconvenience to a plaintiff's religious practice.  *Strope*, 381 Fed. Appx at 882 (quoting *Abdulhaseeb*, 600 F.3d at 1316-21, 1325).

11

In his Complaint, Plaintiff states that he has been denied a Halal diet by Defendants. (Doc. 1 at 2).  Defendants assert that the meals served at GCCF conform to a Halal diet, explaining that all prison chaplains in New Mexico agreed in a meeting that the non-pork and vegetarian options would be suitable meals for Muslim inmates.  (Doc. 16-7 at 19).  Although Defendants state that both the non-pork meals and the vegetarian meals are designed to conform to religious dietary restrictions, they offer little evidence to suggest that they fully understand that compliance with a Halal diet requires more than abstaining from the consumption of pork.  For example, in his affidavit, Defendant Opatz states that "Jernigan's claims that the non-pork meal option violates Halal are incorrect.  These meals do not contain any pork, nor are they made with any ingredients containing pork or pork by-products.  There simply is no pork involved in cooking these meals.  The same is true of the vegetarian meals." (*Id.*).

According to the Islamic Food and Nutrition Council of America ("IFANCA") and Islamic Services of America ("ISA"), a Halal diet prohibits items considered unlawful, or haram.  These items include pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products. *See* Islamic Food and Nutrition Council of America, *What is Halal?,* http://www. ifanca.org/halal/ (last visited December 10, 2012); Islamic Services of America (ISA), *What is Halal?,* http://www.isaiowa.org/content.asp?ID=1677 (last visited December 10, 2012); *see also Williams,* 343 F.3d at 215. Food containing gelatin, enzymes, and emulsifiers are questionable because of their unclear origins; they may be Halal or haram. *See* IFANCA, *What is Halal?;* ISA, *What is Halal?.* Organizations such as IFANCA and ISA offer a certification procedure, by which Halal products are marked with a logo that confirms their Halal status. *See* IFANCA, *About IFANCA,* http://www.ifanca. org/about/ (last visited February 26, 2010); ISA, *The Certification Process,* http://www.isaiowa.org/content.asp?ID =1680 (last visited December 11, 2012); *see also Abdulhaseeb*, 600 F.3d at 1313.

Defendants do not contend that the meat served as part of the non-pork diet has been certified as Halal.  Additionally, Defendants' contention that no pork is served is undermined by the menu Plaintiff attached with his response.  The Court has counted at least five meals that include chorizo, a kind of sausage typically made from pork.  (Doc. 27-2 at 12-17); Chorizo Definition, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/chorizo (last visited Dec. 11, 2012).  While the menus specify that menu items such as hot dogs and ham are made from turkey, there is no indication that the chorizo is not pork.  (Doc. 27-2 at 12-17).  Additionally, the menus list at least two meals that include gelatin, a substance that may or may not be Halal.  (*Id.* at 12, 17).

Although Defendants argue that Plaintiff can choose to eat from the vegetarian menu, they have not presented any specific evidence that supports their contention that the items served conform to a Halal diet.  Although they state that prison chaplains in New Mexico have reviewed it, Defendants do not explain the standards the chaplains used to determine that it conforms to religious dietary requirements, specifically Halal.

Based on the record, and considering the evidence in the light most favorable to Plaintiff as the non-moving party, Defendants have not demonstrated that the meals served at GCCF conform to the requirements of a Halal diet.  Under Tenth Circuit precedent, the denial of a Halal diet places a substantial burden on a plaintiff's religious practice; Plaintiff has met his burden of demonstrating that Defendants' conduct substantially burdens his religious practice. Defendants have not provided any information as to whether this burden on Plaintiff's religious practice is legitimately related to penological interests so the Court does not reach an analysis of the Turner factors.

### ii.  Forced Worship with Nation of Islam

To demonstrate a violation of his First Amendment rights, Plaintiff must demonstrate that

Defendants' conduct placed a substantial burden on his ability to practice his sincerely held religious beliefs.  In his Complaint, Plaintiff alleges that Chaplain Opatz forced him to worship with the Nation of Islam.  (Doc. 1 at 4). In a grievance, Plaintiff explained that the followers of the Nation of Islam do not follow the same beliefs as Orthodox Muslims and therefore, they should be allowed to worship separately.  (Doc. 16-2 at 24).

An affidavit from Defendant Opatz explains that the chapel is available for Jumu'ah prayer for one and a half to two hours on Fridays, with each denomination leading the program for half of the prayer.  (Doc. 16-7 at 21).  Inmates could attend either or both of the programs. (*Id.*).  Plaintiff supports this claim with conclusory allegations in his Complaint, and does not respond to Defendants' explanation that there are now two programs.  Therefore, Plaintiff has failed to provide specific facts to support his claim and demonstrate that there is a genuine issue of material fact.  This claim should be dismissed.

### iii.  Hinderance of Religious Practice

Plaintiff alleges that Defendant Opatz hindered his religious practice by placing stipulations on Plaintiff's religious practices.  Plaintiff does not specify what these stipulations actually are in his Complaint.  In his grievances, Plaintiff does state that Defendant Opatz requires inmates to speak with another inmate in lieu of speaking directly with him.  (Doc. 16-2 at 21).  He also states, in his Response, that Defendant Opatz locked the door to the chapel at five o'clock in the morning during Ramadan.  (Doc. 27 at 11-12).  Defendants submitted an affidavit from Defendant Opatz in which he states that he solicited Islamic religious materials, arranged special meals for Muslim prisoners during Ramadan, and kept religious items in the chapel that Muslim inmates could wear during prayer.  (Doc. 16-7 at 22-24).

To survive summary judgment on this claim, Plaintiff must first demonstrate that Defendant Opatz's conduct substantially burdened his religious practice.  Here, Plaintiff's Complaint does not specify the "stipulations" that Defendant Opatz placed on Plaintiff's religious practice.  Plaintiff's only grievance to mention a rule made by Defendant Opatz – that inmates

14

must speak to another inmate rather than directly to Defendant Opatz – does not, even if true, rise to the level of a substantial burden on Plaintiff's religious practice.  It does not require Plaintiff to engage in conduct prohibited by his religious beliefs or prevent conduct required by his religious beliefs.  Nor does it place substantial pressure on Plaintiff to engage in prohibited conduct or abstain from required conduct.  Plaintiff's claim that Defendant Opatz prevented inmates from worshipping in the chapel during Ramadan is not considered because Plaintiff's Response is not treated as an affidavit.  However, if the Court were to consider it, an isolated incident as described would not rise to the level of a substantial burden on Plaintiff's religious practice.

### d.  Equal Protection Claims

"To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose."  *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003).  Religion is a suspect classification, and where a classification targets a suspect class or involves a fundamental right, the Court applies strict scrutiny.  *KT. & G. Corp. v. Attorney General of State of Okla.*, 535 F.3d 1114, 1137 (10th Cir. 2008).

### i.  Denial of a Religious Diet

Plaintiff alleges that, because of discrimination, Jewish inmates receive Kosher diets in order to meet their religious dietary guidelines while Muslim inmates do not receive a Halal diet. (Doc. 1 at 2; 16-2 at 20).  The Court construes this as a claim that Plaintiff has been deprived of his Fourteenth Amendment right to Equal Protection.  Defendants state that Jewish inmates receive the same two meal options that Muslim inmates receive.  (Doc. 16-7 at 19).

The Court finds that Plaintiff has adequately alleged an Equal Protection claim for the purposes of this Motion for Summary Judgment.  Plaintiff is a Muslim with specific religious

dietary requirements.  Jewish inmates who keep a Kosher diet have similar religious dietary requirements.  The Court is persuaded that Jewish and Muslim inmates are similarly situated and any disparate treatment must meet the standard under strict scrutiny.  Although Defendants may be able to show that Jewish inmates do not receive Kosher diets, the *Martinez* Report contained no evidence to support this other than Defendant Opatz's statement, which, when compared to Plaintiff's statements, does not demonstrate that no genuine issue of material fact exists.  *See Hall*, 935 F.2d at 1111.

Plaintiff and Defendant have made conflicting assertions regarding whether Jewish inmates receive a Kosher diet and with no other evidence in the record, there remains a genuine issue as to material fact.  Therefore, this claim should not be dismissed.

### ii.  Forced Worship with Nation of Islam

Plaintiff's Complaint alleges only that Defendant Opatz forced him to worship with the Nation of Islam.  While the record includes a grievance in which Plaintiff explains that various Christian denominations have opportunities to worship separately, he does not support this with any facts or concrete examples.  (Doc. 16-2 at 24).  As explained above, Defendants provided an affidavit that explained that Orthodox Muslims and followers of the Nation of Islam had a meeting in which they established a way for the two groups to have separate programming. (Doc. 16-7 at 21).

Because Plaintiff's Complaint contains only a conclusory allegation that he has been forced to worship with the Nation of Islam, and the only thing in the record that could be construed as supporting this claim is his conclusory allegation in his grievance, Plaintiff has not shown that he has an Equal Protection claim.  Plaintiff has failed to show that Orthodox Muslims and the followers of the Nation of Islam do not, in fact, have separate services, nor has he specifically alleged a discriminatory purpose as required to state an Equal Protection claim, thus this claim should be dismissed.

### e.  Due Process Claim

Plaintiff alleges that Chaplain Opatz violated his rights under the Due Process Clause of the Fourteenth Amendment by purposely destroying religious materials sent to the prison by Plaintiff's father.  (Doc. 1 at 4; Doc. 16-2 at 7).

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1, however, an intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause if a meaningful post deprivation remedy is available.  *Hudson v. Palmer*, 468 U.S. 517, at 533 (1984); *Durre v. Dempsey*, 869 F.2d 543, 546 (10th Cir. 1989).  Prison grievance procedures can provide adequate post deprivation remedies.  *See Hudson*, 468 U.S. at 536 n.15.  The New Mexico Tort Claims Act also provides a remedy where a prison employee intentionally deprives an inmate of property.  *See* N.M. Stat. Ann. § 41-4-12; N.M. Stat. Ann § 33-3-28(A).

Because Plaintiff could potentially pursue a claim under the New Mexico Tort Claims Act for the alleged destruction of his property, and has pursued his available remedies within the prison grievance system, the Court finds that Plaintiff's Due Process rights have not been violated and his claim that Defendant Opatz destroyed his religious materials should be dismissed.

## IV.   Conclusion

For the reasons explained above, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment should be **DENIED** as to Plaintiff's claims that the denial of a Halal diet violates his First and Fourteenth Amendment rights.  The Court recommends that Plaintiff's claims that his constitutional rights have been violated because he has been forced to worship with the Nation of Islam, Defendant Opatz hindered his religion, and that Defendant Opatz destroyed his religious materials should be **DISMISSED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE